argument not to exceed 15 minutes per side. Mr. Beaton, you may proceed for the appellate. Good morning. Good morning, Your Honors, and may it please the Court, I'd like to reserve three minutes. Very well. Your Honors, I'm here this morning on behalf of Mr. Coleman in this criminal appeal that raises one important question, which is whether the court below had reasonable cause to doubt Mr. Coleman's competency at the trial proceedings, and by competency that includes both his ability to assist his counsel in the defense of this criminal proceeding and also his understanding of the nature of the criminal proceeding against him. You wouldn't, I don't assume you would concede that you pretty much cherry-picked the record. No, Your Honor, I wouldn't concede that, and I would point out that the nature of this challenge in which the district court has a sua sponte obligation to raise the need for a competency hearing necessarily involves appellate counsel reviewing the record for facts not that were submerged and may have snuck up on the court, but the ones that were reasonably apparent to the court below and should inform, should have informed the decision to sua sponte raise the issue of competence, which of course is not a, which differs from a traditional criminal appellate error in that the statute itself places the sua sponte obligation on the district court. Congress said when there is reasonable cause to doubt the present mental ability to assist in the defense and to understand the nature of the proceedings, that obligation is directly on the court. Yes, I'm sorry. The assistant, unable to assist in the defense, is there an affidavit by trial counsel that indicates that your client was unable to assist the counsel? There's not an affidavit, but perhaps there's something even more on point, which is at a hearing held shortly after the trial in which the defendant, having just been convicted, moved pro se for new counsel. There was a trial counsel in the court in which, among other things, the defense counsel said on the record that they had communicated hardly at all and not until just before trial. And he ascribed this behavior of his client, this inability to communicate, to Mr. Coleman's paranoia about trial counsel's role relative to the district court and to the prosecutor. But if it was a significant problem, I would think that there would be some evidence presented from the trial counsel as to this is the problem I had because of the incompetency. And I just don't see it. Well, I think if your honor would like to look at this evidence, you can find it at ECF number 72, I believe, from the district court record, which is the transcript from that motion to withdraw counsel in which it was on the record, it was before the district court, both the client and the counsel discussed the problems that they were having. And defense counsel was allowed to withdraw from the case at that point. Well, yeah, but your honor, I didn't mean to cut you off. I was concerned, and I ask you, one of the things, you want the district judge to sui sponte, do something in this case, but here we have a highly experienced district judge who is well respected, I believe, by this court. Why shouldn't we just rely on what he did? I mean, how do we come and say, well, you were wrong. You've been a judge for 15, 20 years. You have a great record up here. I think this points up the distinction between the statutory standard here, which calls for the reviewing court to examine the evidence before the district court that should have reasonably caused doubt. We're not saying that he would or should have ultimately determined that the defendant was in fact incompetent, but simply, according to Congress, whether there was doubts regarding that competence. And it's important to note, I think, that the reasonableness standard for the reviewing court is baked into the statute from Congress. It is not a case in which a reasonable standard has to imply that the district judge was not reasonable. And that's my point. We have somebody who is, at least by past, very reasonable. Certainly. And I definitely don't think Congress or the Supreme Court or the courts of appeals across the country would imply that a finding of error simply for not holding a hearing implies that, on a larger level, this district judge or any district judge would be sort of unreasonable in recognizing these signs. But what Congress and the courts of appeals and the Supreme Court have called for is an examination of the record to say, well, should there have been doubt? And this was necessarily a part of the Supreme Court's understanding in Pate v. Robinson, as codified by Congress in 42-4-1A, that there would be instances in which even reasonable judges would reach unreasonable conclusions in failing to call for a competency hearing. This analysis, I'm certain, is not the least bit familiar to your honors in which all sorts of talented district judges from across the circuit, nevertheless, will make errors that you find were unreasonable or an abuse of discretion. Let me ask you this. Has his trial counsel or you as his appellate counsel ever asked the district court for permission to have this man examined by a psychiatrist? No, there is not such a request in this case. You don't have like an affidavit to show that he is indeed incompetent. That's correct. The relief requested today is simply a limited purpose remand so that the district court could have such a hearing. And that is the point at which a psychiatrist's evaluation would occur, the sorts of evidence and affidavits that your honor... Not necessarily. A hearing doesn't necessarily imply that the district court has to appoint a psychiatrist. That's true, your honor. It would be the opportunity for the defendant to offer whatever evidence supported the claim of incompetence. And certainly, district courts in the ordinary course often, if not always, would seek the consultation of a psychiatrist if, for instance, there was a remand from a court of appeals. Aren't you really saying that we have a situation, ineffective assistance of counsel? No, your honor. I think an ineffective assistance claim... You don't think there's more of a burden on the lawyer to ask for a hearing than there is on the trial judge to sua spani recognize it? What I'm trying to distinguish, your honor, is that if there is an ineffective assistance claim in this case, that would not be raised on direct appeal ordinarily. There could be an objection to trial counsel's failure to move for a hearing in light of the record evidence regarding paranoia, lack of communication, inability to communicate and understand the role in the proceeding. There are multiple counsel here. None of them asked for a hearing. Which is actually an interesting point, your honor, that I think cuts in the direction of a remand. And for this reason, you didn't have a situation here in which one defense counsel handled this from start to finish, saw the full spectrum of Mr. Coleman's irrational and delusional behavior. In fact, you had the two counsel most responsible, at least for the liability phase here, the guilt phase. One moved to withdrawal very quickly after only a couple of weeks after a physical altercation that obviously ceased communication within the attorney-client relationship. That relationship failed. We can't expect that attorney to have understood the nature of it as mental issues. The second counsel, as we've already discussed, hardly spoke with him at all. And then after the conviction, said on the records to the judge, yes, he was paranoid, yes, we didn't speak. And even that was, as I mentioned, an incomplete perspective. So stepping back, the one actor who had the full range of evidence, which we referred to in the papers, was the district court. And in this instance, it's perhaps most appropriate for the district court to have raised it. Do you know whether Mr. Coleman actually is a college graduate working on his master's? I do not know that. I'm certainly not in a position to represent that for the record here. It might have been a good thing to find out. I'm sorry? It might have been a good thing to find out. Well, I will say, and I don't believe my friend on the other side would and perhaps has conceded this already in his brief, that there were many factual inaccuracies about Mr. Coleman's own personal background, about the events that led to the trial, and about the nature of the legal proceedings against him. Counsel, this case is different than most legal incompetency cases that I have experienced. I mean, if you're arguing he was legally incompetent during the time of trial, usually a case like this will have somebody who has a history of mental illness. And the issue will be whether the mental illness was such a degree during the trial that he could not understand the nature of the proceedings or assist counsel, or the mental illness got worse at this time. Is there any history at all, at any time, of mental illness of your client? There is no medical evidence in the record at this time, but I would submit that the chief reason for that is because no one has raised this issue until appeal, and so there's not been an opportunity. Your client knows whether he was ever diagnosed as being mentally ill. I mean, it's not like somebody else has the records. I suppose my point, Your Honor, is that whether or not he understands his medical history or not, I have no reason to believe that anyone has ever sought to diagnose him and produce the sort of evidence that would be appropriate at a competency hearing. With absence of evidence of any mental illness, past, present, or future, you know, at any time, to establish legal incompetency is higher than just establishing mental illness. And I mean, I've had cases before that, yes, the defendant is mentally ill, but his mental illness does not arise to the point of incompetency. And you don't even have the first step here. And the reason for that, Your Honor, is I believe we're only at the first step in terms of even investigating this issue. No, you are. You are his attorney, at least your attorney now. You didn't do the brief, I see. That's right. But have you substituted for the other counsel? Yes, Your Honor. And I appreciate your service under the Criminal Justice Act, by the way. All right. Other questions? I see your time is up. My time is up.  You'll have your rebuttal. Thank you, Your Honor. Thank you. Good morning. Good morning, Your Honors. May it please the Court, Kerry Howard for the United States. Your Honors, the District Court judge, the three defense attorneys, and two prosecutors in this case recognized that there was not a reasonable cause to doubt that the defendant was competent to stand trial. And it was also recognized that from the onset of this case that this was a matter of strategy, that the defendant chose to explore a defense of challenging the Court's jurisdiction by espousing the fringe views of sovereign citizens, tax protesters, and as he proclaimed in a notice to the Court, a self-proclaimed Moorish citizen. He proclaimed himself to be a flesh-and-blood living man. He referred to himself as a third-party intervener. He stated that he was not a corporation and could not enter into a contract with the United States. He claimed that he had paid his debt in full. He claimed that he could not enter into a plea of not guilty at arraignment because it would bind him to a contract. And he also challenged the views of sovereign citizens, tax protesters, and self-proclaimed Moorish nationals. This is a person who had no history, no known history of psychological problems as the PSR reported. He stated himself that he was of sound mind. And there was nothing that showed, that led any of the three defense attorneys to file a motion for competence. Some of his statements were bizarre, to say the least. One, he said that he was going to be on a TV show with Charlie Sheen, anger management. I'm thinking maybe that's a joke or something. There are some statements that are just, what? That is true, Your Honor, and it's not uncommon for defendants to reach the sentencing phase to espouse grand ideas of what they're going to do if they were going to get out. But I mean, a statement like he's going to be on a TV show with Charlie Sheen has nothing to do with his political views, that he's not subject to the jurisdiction of the United States. It's just bizarre, right? Absolutely. But also at sentencing, he recognized that his challenge to the jurisdiction was a strategy by saying that he did not mean to disrespect the court and that he was doing what he thought was best in his case with the charges that he was facing. And he continued to lay the record out for such an event so that an appeal could be taken. At the very beginning of this case, when the police arrived on scene after he pulled the gun on the tow truck driver, he minimized it. There was nothing in the record at that time that showed that he was a sovereign citizen or had any type of competency deficiency or any type of mental illness. He told the officers that there was no gun, the officers found the gun. And then when he realized that minimizing would not work, that's when he came to court with the idea of challenging the court's jurisdiction as a sovereign citizen. And he continued to do that throughout the entire proceedings. Do we think he's a college graduate or not? Believe he does have a bachelor's degree. I believe that that was confirmed with the police officer. What school? That I do not know, Your Honor. That I do not know. But he certainly was eloquent in the motions that he filed with the court. He was eloquent when he addressed the court at his sentencing. And he acknowledged that he understood the proceedings when he continued to file pro se motions. And when the court barred him from doing so, he ceased and started to send them through the mail. So he acknowledged the authority of the court over the proceedings. He acknowledged the authority of the court over whether or not he can file motions. And he respected that as he respected the court at sentencing. Now the idea of dealing with sovereign citizens coming into court, it's not something new to the court system. It happens in circuits across the country and in local courts around the country. And the purpose of arguing and challenging the jurisdiction is to frustrate the court system, to confuse it, to delay it, and to create a record that allows for an appeal such as the one that we're facing today. And that's in the case of opposite of if they truly believe in those fringe views. Now you have to understand that he did not try to harm the court system. He did not try to harm himself by entering into these fringe views. He did not plead guilty and urge his attorneys to plead guilty. He strategized with his attorneys. He asked that a certain document be read in court that could solve his case. So he had the ability to communicate with his defense counsel. When they disagreed with the defense, that's when he decided to shut down. And his distrust of the attorneys, what led to the physical confrontation or nearly physical confrontation with the first attorney, is consistent with the Moorish views of not trusting court-appointed counsel. It's common in these Moorish national views and the views of sovereign citizens that if you accept court-appointed counsel, you're relegating yourself to the jurisdiction of the United States and the jurisdiction of the court. And that would go against his strategic decision to challenge that jurisdiction. The other point I would like to make, Your Honor, is that this court has in the past recognized that the bare record alone is not sufficient to replace the judgment of the district court judge. The record does show that the district court judge engaged in lengthy conversations and interactions with Mr. Coleman. And during those conversations, nothing at the level of the district court judge, and as you stated, who has many years of experience on the bench, to sui sponte request a competency evaluation. Nothing. Mr. Howard, what's our standard of review in this case? Your Honor, I believe the standard of review would be a plain error. The competency was never raised. They argue that the nature of the claim is that the judge failed sui sponte to raise it. So they're saying the nature of the claim assumes that there was not an objection. And therefore, plain error doesn't seem to fit here. Well, being that competency was not raised at the arraignment, it was not raised during the course of any of the pretrial hearings, it was not raised during the trial, and it was not raised during sentencing, the first time that competency is being, the issue of competency is here in the appeal. By not having, by this being the first time that it's being raised, plain error would be appropriate. Abuse of discretion, if competency had been raised at any point during the, with the district court, abuse of discretion would be appropriate. Does the standard of review make any difference on the outcome of the case? It does not. It does not. Your Honor, with that I would rest. I don't have any more questions. No further questions for Judge Norris? Thank you, Mr. Howard. Rebuttal? Thank you, Your Honor. Just a couple of brief points. On the standard of review, I would refer the court to the De Brule published decision of this court, which applies the abuse of discretion standard, and ties it to the statutory standard, as we discussed earlier. And as Your Honor just noted, that's also consistent with the standard in the Second Circuit and the other courts that have considered the nature of this sua sponte obligation. But I agree that it makes no difference in this case to the ultimate outcome, because quite clearly substantial rights were affected if there was, in fact, an error. As to the judge's recognition of Mr. Coleman's competency or lack thereof, as my friend suggested, what the court said on the record cannot, in my submission, fairly be construed as recognizing a potential issue and treating it as resolved. What the district court said at the hearing in August, just after the conviction, was that, and also in April, the initial motion to withdraw hearing, you'll find these at ECF 71 and 72, were that Mr. Coleman showed total ignorance of what was going on in the courtroom and that what he was saying made no sense. So whether that is by itself sufficient to show legal incompetence, I don't think we have to take that extreme position. Nor can this be, however, affirmative evidence that he was, in fact, competent. There was at least indications on the record of a problem here. And along those lines, the sovereign citizens element, my position is not that any sovereign citizen is even presumptively legal incompetent. But I believe the position that the government at least suggests in its brief is that the district court and the Court of Appeals can simply set to the side any fringe views. And anything unusual, if it could perhaps be chalked up to a fringe view, then you don't have to worry about the suespone obligation to account for legal incompetence. It would certainly, if we did as you said, it would certainly open up Pandora's box for future defendants to act bizarre in court, would it not? I would hope not, Your Honor, because I believe the way that this... Why not? The way the court could resolve this case is by saying, even setting aside the fringe views that were articulated at some point here, which should perhaps at least raise a concern, but certainly wouldn't be dispositive of legal competence. You can point to the breakdown in communications, the paranoia, the legal addressing of the jury, quizzing the judge regarding his authority and his testimony. That is almost entirely divorced in addition to the sovereign citizen... ...speculated by some future defendant. Well, Your Honor, I would concede that... I mean, you know, who's to say that he didn't, that wasn't what he was doing in this case? But forgetting that for the moment, I could see this causing a different kind of standard for judges. I certainly am not suggesting that the court move the standard in one direction or the other. I'm suggesting that the court move the standard in the other direction.  I'm just suggesting that the court move the standard in the other direction. Thank you, Your Honor. Any further questions? Judge Norton. All right. Mr. Beaton, thank you very much for taking this assignment pursuant to the Criminal Justice Act. We appreciate your service. Thank you. May call the next case. Case is submitted.